UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

———————————————

In re:

NICOLAS WARNER,                                          Case No. DG 12-07958
                                                        Hon. Scott W. Dales
                                                        Chapter 7
                    Debtor.
_____/

NICOLAS WARNER,

                                                        Adversary Proceeding No. 12-80373
                    Plaintiff,

v.

BANK OF AMERICA, NATIONAL
COLLEGIATE STUDENT LOAN TRUST
2003-1, 2005-3, 2004-2, 2006-2, 2006-3, and
NATIONAL COLLEGIATE MASTER
STUDENT LOAN TRUST-I,

                    Defendants.
_____/

OPINION AFTER TRIAL

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

I. INTRODUCTION

Chapter 7 debtor Nicolas Warner (the "Plaintiff" or "Dr. Warner") sued his

student loan lenders, the United States Department of Education (the "Department"),

National Collegiate Student Loan Trust 2003-1, 2005-3, 2004-2, 2006-2, 2006-3,

National Collegiate Master Student Loan Trust-1 (collectively "NCT"), and Bank of

America (the "Bank"), to obtain a judgment declaring that approximately $432,000.00 in

student loans should be discharged notwithstanding the exception to discharge that

otherwise would apply under 11 U.S.C. § 523(a)(8).[1] By the time of trial, the Plaintiff had settled his lawsuit with the Department, leaving only the loans held by NCT and the Bank at issue. The court held a trial on July 8, 2014 in Grand Rapids, Michigan, at which the Plaintiff testified. The court admitted numerous exhibits, mostly on stipulation, and took the matter under advisement at the conclusion of the trial. The following constitutes the court's findings of fact and conclusions of law in accordance with Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052.

## II. JURISDICTION

The United States District Court has jurisdiction over the Plaintiff's bankruptcy case under 28 U.S.C. § 1334(a) but has referred the case and this adversary proceeding to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a). *See* LCivR. 83.2(a) (W.D. Mich.). To the extent possible under the United States Constitution, the parties have consented to entry of a final judgment by the United States Bankruptcy Court. The court will proceed as if the consent were effective.

## III. ANALYSIS

From 1995 to 2002, the Plaintiff enjoyed some success in a job involving information technology systems at Northwestern Memorial Hospital where he earned approximately $86,000.00 before being laid off. Exh. 6. At the time of his layoff, he decided to follow his dream of becoming a clinical psychologist, and to do so he pursued his doctorate degree from the Illinois School of Professional Psychology at Argosy University ("ISPP").

Before graduating from ISPP in 2008, the Plaintiff entered into numerous loan transactions with NCT's predecessors in interest and with the Bank. Following a four year

---

[1] Except as otherwise expressly noted, statutory citations in this Opinion refer to Title 11, United States Code.

program of study and a residency for two years, the Plaintiff began working as a clinical psychologist for an entity in the Chicago area that serves nursing homes and centers. In addition, with the assistance of a former professor, mentor, and now colleague, Dr. Warner has pursued a private clinical practice several days a week from office space that he shares. For his labors at both jobs, he earned a total of $48,657.00, which he reported on his 2013 tax returns as his adjusted gross income. Exh. 21. With this relatively modest income, he is presently obligated to service his student loans, both federal and private, that total an eye-popping $432,592.70. *See* Plaintiff's Proposed Findings of Facts and Conclusions of Law at ¶ 5 (DN 93).

The documents and testimony establish that in order to service the private student loans alone, he would have to pay approximately $1,700.00 each month. To service his federal student loans, he must pay about another $800.00 each month.

Dr. Warner credibly testified concerning his monthly income and expenses, revealing that after he pays for rent of an apartment, and a modest allowance for food and other necessaries, he has approximately $31.00 left each month which he could devote to the repayment of his loans to NCT and the Bank.

Student loan borrowers frequently prevail upon their parents and others to co-sign or guaranty their obligations in order to obtain funding for their education, generally at the lender's behest, and Dr. Warner is no exception. He prevailed upon his mother, Rosemary Dressler, to co-sign his student loan obligations. Before receiving a discharge of her own obligation to pay Dr. Warner's student loans, she paid approximately $18,255.00 toward their joint student loan obligation between 2008 and 2011. For his

part, Dr. Warner paid approximately $379.00 to NCT and the Bank in the roughly six years since graduating from his doctoral program.

Understandably cowed at the prospect of having to repay this mountain of debt, Dr. Warner is asking the court to discharge in full his obligation under his private student loans, relying on the standards prescribed in the Sixth Circuit opinion of *Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 385 (6th Cir. 2005), and the Second Circuit opinion of *Brunner v. New York State Higher Educ. Serv. Corp.,* 831 F.2d 395, 396 (2d Cir. 1987).

In view of these well-settled authorities, and as the court indicated in the Pretrial Order dated May 16, 2013 (DN 39), to prevail, Dr. Warner must establish by a preponderance of the evidence the following three elements of his case:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Oyler*, 397 F.3d at 385 (quoting *Brunner*, 831 F.2d at 396).

A.      First Prong of *Brunner* Test: Present Inability to Pay

No one quibbles with the assertion that with only $31.00 each month in disposable income, Dr. Warner could not possibly pay the $1,700.00 monthly payment necessary to service his private student loan debt and maintain a "minimal" standard of living.  By his credible testimony, corroborated by his budget (Exh. 2) which the court admitted without objection, Dr.

Warner lives a "frugal" existence, devoid of vacations and retirement savings. He drives a high mileage vehicle of modest make. According to his budget, it appears that he is unable to save towards a down payment for a replacement if, or more likely when, the vehicle ceases functioning.

Because the first prong of the *Brunner* test is concerned only with a debtor's present inability to pay while maintaining a modest or "minimal" standard of living, and because Dr. Warner's present income is barely enough to cover his living expenses in Chicago as matters presently stand, the court finds by a preponderance of the evidence that Dr. Warner has met his burden on this element of the *Brunner* test.

B.      Second Prong of the *Brunner* Test: Persistence of Financial Circumstances During the Repayment Period

The *Brunner* test, however, requires the court to evaluate not only a debtor's present hardship, but to make a prediction about future earning potential during a significant portion of the repayment period. The Sixth Circuit directs the trial courts to consider such factors as a debtor's health, both mental and physical, his dependent's needs, his age, and other customary conditions affecting one's earning capacity. In addition, the court is to consider the prospects for income in the profession or industry for which the Plaintiff has been educated, here the practice of clinical psychology.

To satisfy the second prong of the *Brunner* test, as stated by our Circuit, a debtor must show that circumstances indicate a "certainty of hopelessness, not merely a present inability to fulfill financial commitment." *Oyler*, 397 F.3d at 386 (quoting *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993)); *see also In re Hornsby*, 144 F.3d 433, 438 (6th Cir. 1998) (observing that debtors "need not live in abject poverty before a discharge is forthcoming"). These

circumstances may include, but are not limited to, "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Id.* Ultimately, the most important factor in satisfying the second prong is that the "additional circumstances" must be "beyond the debtor's control, not borne of free choice." *Id.*

In pretrial disclosures and again during the trial, Dr. Warner conceded that he has no mental or physical incapacity or infirmity, and that he has no dependents. He lives alone. At trial, he appeared to be in good health, alert, intelligent, and sophisticated. He is, after all, highly educated, holding associates, bachelors, masters, and doctoral degrees. He was an articulate and thoughtful witness who presented himself as a capable and competent professional, passionate about his work and committed to the practice of psychology. Although he credibly testified that he performed a national job search, he found success only in the Chicago area, perhaps due to the connections derived from, and the reputation of, his alma mater.

The court infers that he is a capable psychologist, as it appears that he has found favor with his former professor (who is serving as a mentor and sharing office space). Moreover, he is working as a contractor for Davken & Associates, while building a private practice in the Chicago area. There is no question that he has useful job skills, and that he is in fact using them. The problem, it seems, is his income and his late start on a career. He is currently 47 years old.

As the court just indicated, his present income will not permit him to make payments on his private student loans, but the same cannot necessarily be said about his future income. When the court inquired of Dr. Warner about whether his present standard of living was minimal, he simply responded that he lived a frugal life and has not been able to save for retirement or take vacations. Based upon Exhibit 9, the Bureau of Labor Statistics income information for clinical psychologists in various parts of the country, the court finds by a preponderance of the evidence

that Dr. Warner will likely earn approximately $70,000.00 in the near future as he develops his private practice and establishes himself as a professional in the Chicago area. If the court's prediction bears fruit, Dr. Warner would have approximately $20,000.00 each year in additional gross income. Naturally, from this income, the court would have to deduct additional expenses associated with a full time clinical practice, and as Dr. Warner points out, his debt service on his federal student loans would increase because he has entered into an income dependent repayment plan as part of his settlement with the Department. Although the court does not doubt that Dr. Warner's expenses will increase, the record does not permit the court to determine to what degree, a matter on which he bore the burden of proof. What does seem likely, by a preponderance of the evidence, is that in the relatively short term, his income will meaningfully increase.

In addition, as noted above, his mental and physical health are not likely to impede his earning potential, nor is his age. Under the circumstances, it appears that Dr. Warner's income will increase during the repayment period and on the record, the court is unable to find a certainty of hopelessness with respect to the prospect of repaying NCT and the Bank. Although Dr. Warner may not be able to repay them in full, he will be able to make some payments to these Defendants while maintaining his current, albeit "frugal" standard of living. Consequently, the court finds that he has not established a certainty of hopelessness with respect to his potential for repaying some portion of the debt to NCT and the Bank.

C.      Third Prong of the *Brunner* Test: Good Faith

Similarly, Dr. Warner has failed to establish by a preponderance of the evidence his good faith efforts to repay his private student loans. The Defendants made much of the fact that he

agreed to settle with the Department during the course of this adversary proceeding, but did not attempt to settle with them. Dr. Warner responded, however, that he repeatedly inquired of the Defendant's servicer, American Education Services ("AES"), about settlement and it repeatedly advised him that it was unable to offer him any accommodation on his private student loans. The evidence established that Dr. Warner reasonably believed he was dealing with the Defendant's agent when discussing prospects for repayment plans. Consequently, the court finds that this aspect of the Plaintiff's repayment history does not show bad faith. However, at trial and in his pleadings, Dr. Warner suggested that he made substantial payments toward his private loans -- approximately $18,634.69. However, on cross-examination, he admitted that his mother and co-debtor, made those payments. In fact, he conceded that he made a single payment of $379.00, a paltry contribution, especially when compared to his mother's payments. The court does not regard the single payment under these circumstances as establishing Dr. Warner's good faith.

Moreover, and perhaps most significant in the court's decision regarding this aspect of the *Brunner* test, is the undisputed fact that Dr. Warner received over $6,000.00 in tax refunds in 2013 and did not remit a single penny to his private student loan lenders. Instead, he used those funds for other purposes, presumably living expenses and the development of his private practice. It seems clear, however, that he could have forwarded some portion of his tax refund to chip away at his substantial student loan debt. On this record, the court finds that Dr. Warner has not established a good faith effort to repay his private student loans and therefore has failed to satisfy the third element of the *Brunner* test. In prior tax years he had modest refunds, certainly less than the 2013 refunds, yet he remitted nothing from the earlier refunds to NCT or the Bank.

Even acknowledging Dr. Warner's efforts to settle with AES, the court nevertheless finds that he has failed to establish by a preponderance of the evidence his good faith effort to repay his private student loans.

IV. <u>CONCLUSION</u>

Although the amount of student loan debt at issue in this case is shocking, and all the parties are responsible for the positions they now find themselves in, the *Brunner* test does not permit the court to concern itself with the irresponsible lending by the Defendants (or their predecessors) or the unrealistic borrowing by the Plaintiff at the time they entered into loan after loan, heedless of earning potential. Instead, the applicable law requires the court to determine whether the Plaintiff can pay back something, not necessarily the debt in full, over the repayment period, without consigning himself to destitution. Although some courts have been persuaded to discharge a portion of a debtor's student loans, Dr. Warner did not seek this relief or build a record on which the court might award it, even assuming such partial discharge were available under the statute, leaving the court with the unpalatable task of entering a judgment that, as a practical matter, saddles him with a lifetime of debt.

The court finds that although the Plaintiff will have to live "frugally" for the foreseeable future and will probably never own a house or a decent car, he will be in a position, throughout the majority of the repayment period, to make payments on his debt to NCT and the Bank without impoverishment. For policy reasons sufficient to move Congress to except student loans from discharge except upon a showing of "undue hardship" as our Circuit has interpreted that term, Dr. Warner and his lenders will have to live, uneasily it seems, with the consequences of the bargains they improvidently struck at the beginning of their relationship.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall enter judgment in favor of the Defendants, consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Ralph M. Reisinger, Esq., attorney for the Plaintiff, and Monette Wynn Cope, Esq., attorney for the Defendants.

END OF ORDER

**IT IS SO ORDERED.**

**Dated July 31, 2014**



Scott W. Dales
United States Bankruptcy Judge